[ORAL ARGUMENT NOT YET SCHEDULED]

**No. 23-5083**

IN THE UNITED STATES COURT OF APPEALS FOR THE
DISTRICT OF COLUMBIA CIRCUIT

State of Georgia, *et al.*,

Plaintiffs-Appellees,

v.

United States Department of Justice,

Defendant-Appellant.

On Appeal from a Final Judgment of the
United States District Court for the District of Columbia
Case No. 21 Civ. 3138, Judge Trevor N. McFadden

**BRIEF OF AMICI CURIAE NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.; LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW; ADVANCEMENT PROJECT EDUCATION
FUND; ASIAN AMERICANS ADVANCING JUSTICE | AAJC; AND
SOUTHERN POVERTY LAW CENTER
IN SUPPORT OF DEFENDANT-APPELLANT**

ANUJA D. THATTE*
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 682-1300
athatte@naacpldf.org

*(Additional counsel listed on next page)*

JON M. GREENBAUM*
EZRA D. ROSENBERG*
POOJA CHAUDHURI*
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
(202) 662-8600
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
pchaudhuri@lawyerscommitte.org

*(Counsel listing from first page)*

JANAI S. NELSON*
SAMUEL SPITAL*
LEAH C. ADEN*
ALAIZAH KOORJI
JOHN S. CUSICK
KATRINA FELDKAMP
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
jnelson@naacpldf.org
sspital@naacpldf.org
laden@naacpldf.org
akoorji@naacpldf.org
jcusick@naacpldf.org
kfeldkamp@naacpldf.org

JUDITH BROWNE DIANIS
MATTHEW A. FOGELSON
ANGELA GROVES
ADVANCEMENT PROJECT EDUCATION
FUND
1220 L Street NW, Suite 850
Washington, DC 20005
(202) 728-9557
jbrowne@advancementproject.org
mfogelson@advancementproject.org
agroves@advancementproject.org

NIYATI SHAH
TERRY AO MINNIS
ASIAN AMERICANS ADVANCING
JUSTICE | AAJC
1620 L Street NW, Suite 1050
Washington, DC 20036
(202) 296-2300
nshah@advancingjustice-aajc.org
tminnis@advancingjustice-aajc.org

BRADLEY E. HEARD
PICHAYA POY WINICHAKUL
MATLETHA N. BENNETTE
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite
340
Decatur, Georgia 30031
(404) 521-6700
bradley.heard@splcenter.org
poy.winichakul@splcenter.org
matletha.bennette@splcenter.org

JESS UNGER
SABRINA S. KHAN
SOUTHERN POVERTY LAW CENTER
1101 17th Street NW, Suite 705
Washington, DC 20036
(202) 728-9557
jess.unger@splcenter.org
sabrina.khan@splcenter.org

*\*Admitted to the D.C. Circuit*

*Counsel for Amici Curiae*

September 15, 2023

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

Pursuant to D.C. Circuit Rule 28(a)(1), Amici Curiae certify as follows:

### A.      PARTIES AND AMICI

Except for the following, all parties, intervenors, and amici appearing before the District Court and in this Court are listed in the Brief for Defendant-Appellant: Amici Curiae NAACP Legal Defense and Educational Fund, Inc. ("<u>LDF</u>"), Lawyers' Committee for Civil Rights Under Law ("<u>Lawyers' Committee</u>"), Advancement Project Education Fund ("<u>AP</u>"), Asian Americans Advancing Justice | AAJC ("<u>Advancing Justice-AAJC</u>"), and Southern Poverty Law Center ("<u>SPLC</u>"), which file this amicus brief in support of Defendant-Appellant United States Department of Justice ("<u>DOJ</u>").

### B.      RULINGS UNDER REVIEW

References to the rulings at issue appear in the Brief for Defendant-Appellant DOJ.

### C.      RELATED CASES

This case has not previously been before this Court or any other court, other than the District Court proceedings below.  The parties to this case (Plaintiffs-Appellees State of Georgia and Brad Raffensperger and Defendant-Appellant DOJ), as well as private plaintiffs represented by undersigned Amici and other counsel, are engaged in litigation before the United States District Court for the Northern District

of Georgia, which was consolidated for discovery purposes and from which the communications at issue in this FOIA appeal arise. *See In re Georgia Senate Bill 202*, No. 21-mi-55555 (N.D. Ga.).

/s/ Anuja D. Thatte
Anuja D. Thatte

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Amici Curiae make the following disclosures:

LDF is a nonprofit, non-partisan corporation. LDF has no parent corporation, and no publicly held corporation holds ten percent or more of its stock.

Lawyers' Committee is a nonprofit, non-partisan corporation. Lawyers' Committee has no parent corporation, and no publicly held corporation holds ten percent or more of its stock.

AP is a nonprofit, non-partisan corporation. AP has no parent corporation, and no publicly held corporation holds ten percent or more of its stock.

Advancing Justice-AAJC is a nonprofit, non-partisan corporation. Advancing Justice-AAJC has no parent corporation, and no publicly held corporation holds ten percent or more of its stock.

SPLC is a nonprofit, non-partisan corporation. SPLC has no parent corporation, and no publicly held corporation holds ten percent or more of its stock.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .............i

CORPORATE DISCLOSURE STATEMENT ..................................... iii

TABLE OF CONTENTS......................................................iv

TABLE OF AUTHORITIES ................................................vi

GLOSSARY...............................................................ix

STATUTES AND REGULATIONS................................................ix

IDENTITY AND INTEREST OF AMICI CURIAE ...............................1

INTRODUCTION ........................................................4

ARGUMENT ...........................................................6

I. THIS COURT SHOULD BAR THE DISCLOSURE OF AMICI'S COMMON INTEREST ATTORNEY WORK PRODUCT FROM THEIR ONGOING LITIGATION AGAINST PLAINTIFFS-APPELLEES..................6

  A. There Is No Dispute That the At-Issue Communications Are Textbook Attorney Work Product. ................................................7

  B. The District Court Erred in Failing to Recognize DOJ and Private Plaintiffs' Common Interest. ..........................................9

    1. The parties have a strong common interest in prosecuting their challenges to SB 202. ...............................................9

    2. The parties' communications were "designed to further" this common interest. ....................................................13

    3. The work product protection applies because no communications were shared with adversaries...........................................14

II. THE AT-ISSUE COMMUNICATIONS FALL SQUARELY WITHIN EXEMPTION 5, WHICH PROTECTS DOCUMENTS "NORMALLY PRIVILEGED IN THE CIVIL DISCOVERY CONTEXT."..........................16

A. The At-Issue Communications Are "Intra-agency" Because They Further DOJ and Private Plaintiffs' Common Litigation Interest. ............................17

B. The District Court's Denial of Exemption 5 Misapprehends the Law and Common Interest Here. .................................................................................19

III. THE ADVERSARIAL PROCESS WOULD BE SEVERELY HAMPERED IF FOIA IS INTERPRETED TO ALLOW A BACKDOOR TO PRIVILEGED LITIGATION STRATEGY. ....................................................22

A. If the District Court's Ruling Is Affirmed, the Adversarial Process in the Consolidated Litigation Would Be Severely Hampered. ..............................23

B. Disclosure of the At-Issue Privileged Communications Also Would Have Severe Implications for Other Litigation Contexts. ......................................26

CONCLUSION ........................................................................................................29

CERTIFICATE OF COMPLIANCE ......................................................................31

CERTIFICATE OF SERVICE ...............................................................................32

# TABLE OF AUTHORITIES[*]

**Page(s)**

**Cases**

*Advancement Project v. U.S. Dep't of Homeland Sec.*,
549 F. Supp. 3d 128 (D.D.C. 2021) ...................................................................4

*Am. Mgmt. Servs., LLC v. Dep't of the Army*,
703 F.3d 724 (4th Cir. 2013) ...............................................................18

*Am. Oversight v. U.S. Dep't of the Treasury*,
474 F. Supp. 3d 251 (D.D.C. 2020) ...................................................17

*Am. Small Bus. League v. Dep't of Def.*,
372 F. Supp. 3d 1018 (N.D. Cal. 2019) .............................................18

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001) ...........................................................................5, 21

*DOJ v. Julian*,
486 U.S. 1 (1988) ...............................................................................18

*FTC v. Grolier Inc.*,
462 U.S. 19 (1983) ..............................................................................21

*Hickman v. Taylor*,
329 U.S. 495 (1947) ...........................................................................6, 8

*\*Hunton & Williams v. DOJ*,
590 F.3d 272 (4th Cir. 2010) ...................................... 7, 17, 19, 22, 23, 24, 25, 27

*Intex Recreation Corp. v. Team Worldwide Corp.*,
471 F. Supp. 2d 11 (D.D.C. 2007) ...............................................11, 13

*Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*,
926 F. Supp. 2d 121 (D.D.C. 2013) ...................................................20

---

[*] Authorities chiefly relied upon are marked with asterisks.

*Lawyers' Comm. v. DOJ*,
    2020 WL 7319365 (D.D.C. Oct. 16, 2020) ........................................................18

*Lawyers' Comm. v. U.S. Off. of Mgmt. & Budget*,
    2020 WL 6887689 (D.D.C. Nov. 24, 2020) ........................................................4

*LDF v. DOJ*,
    612 F. Supp. 1143 (D.D.C. 1985) ........................................................4

*Leader v. DOJ*,
    2012 WL 13027964 (D.D.C. Aug. 9, 2012) ........................................................18, 22

*Minebea Co. v. Papst*,
    228 F.R.D. 13 (D.D.C. 2005) ........................................................9, 11, 12

*Nat'l Ass'n of Home Builders v. Norton*,
    309 F.3d 26 (D.C. Cir. 2002) ........................................................4

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ........................................................5, 16, 17, 24, 28

*Public Citizen, Inc. v. DOJ*,
    111 F.3d 168 (D.C. Cir. 1997) ........................................................17

*Ryan v. DOJ*,
    617 F.2d 781 (D.C. Cir. 1980) ........................................................17

*Samantar v. Yousuf*,
    560 U.S. 305 (2010) ........................................................7, 22

*In re Sealed Case*,
    29 F.3d 715 (D.C. Cir. 1994) ........................................................9, 13, 14

*Sequa Corp. v. Gelmin*,
    1993 WL 276081 (S.D.N.Y. July 16, 1993) ........................................................20

*In re United Mine Workers of Am. Emp. Benefits Plan Litig.*,
    159 F.R.D. 307 (D.D.C. 1994) ........................................................12

*United States v. Am. Tel. & Tel. Co.*,
    642 F.2d 1285 (D.C. Cir. 1980) ........................................................ 8, 10, 12, 14, 15, 24, 25

*United States v. Deloitte LLP*,
    610 F.3d 129 (D.C. Cir. 2010)............................................................8, 13, 14, 15

*United Techs. Corp. v. NLRB*,
    632 F. Supp. 776 (D. Conn. 1985).....................................................15

*Waterkeeper All., Inc. v. Wheeler*,
    330 F.R.D. 1 (D.D.C. 2018) ..............................................................27

*Welby v. Dep't of Health*,
    2016 WL 1718263 (S.D.N.Y. Apr. 27, 2016) ....................................19

**Statutes**

5 U.S.C. § 552(b)(5).............................................................................5, 16

52 U.S.C. § 10308(d) ...........................................................................11

## GLOSSARY

**Advancing Justice-AAJC** means Amicus Curiae Asian Americans Advancing Justice | AAJC.

**AP** means Amicus Curiae Advancement Project Education Fund.

**DOJ** means United States Department of Justice.

**FOIA** means Freedom of Information Act.

**JA** means Joint Appendix.

**Lawyers' Committee** means Amicus Curiae Lawyers' Committee for Civil Rights Under Law.

**LDF** means Amicus Curiae NAACP Legal Defense & Educational Fund, Inc.

**SB 202** means the Georgia law entitled the "Election Integrity Act of 2021," also known as Senate Bill 202.

**SPLC** means Amicus Curiae Southern Poverty Law Center.

## STATUTES AND REGULATIONS

All applicable statutes and regulations are contained in the brief for Defendant-Appellant DOJ.

## IDENTITY AND INTEREST OF AMICI CURIAE[1]

LDF is the nation's first and foremost civil rights and racial justice law organization. Through litigation and other advocacy in the areas of political participation, economic justice, educational equity, and criminal justice, LDF strives to secure equal justice under the law for all Americans and to break down barriers that prevent Black people from realizing their basic civil and human rights.

Formed in 1963 at the request of President John F. Kennedy, the Lawyers' Committee has used legal advocacy to ensure that Black people and other people of color have the voice, opportunity, and power to make the promises of our democracy real. The Lawyers' Committee combats racial discrimination and the resulting inequality of opportunity by enlisting the resources of the private bar.

AP is a national, multi-racial civil rights organization with a long history of racial justice work. Rooted in the great human rights struggles for equality and justice, AP exists to fulfill the United States' promise of a caring, inclusive, and just democracy, including through advocacy and litigation.

Advancing Justice-AAJC is a national nonprofit organization based in Washington, D.C., and founded in 1991. Advancing Justice-AAJC works to

---

[1] Counsel for all parties have consented to the filing of this brief. Amici state that no party's counsel authored this brief either in whole or in part, and further, that no party or party's counsel, or person or entity other than Amici, Amici's members, and their counsel, contributed money intended to fund preparing or submitting this brief.

advance and protect civil and human rights for Asian Americans bringing national and local constituencies together through community outreach, advocacy, and litigation. Advancing Justice-AAJC is a leading expert on issues of importance to the Asian American community, including voting rights. Advancing Justice-AAJC works to promote justice.

SPLC is a catalyst for racial justice in the South and beyond, working in partnership with communities to dismantle white supremacy, strengthen intersectional movements, and advance the human rights of all people.

Amici are counsel for certain private plaintiffs in the previously consolidated, ongoing litigation captioned *In re Georgia Senate Bill 202*, No. 21-mi-55555 (N.D. Ga.), and whose litigation strategy communications with DOJ are at issue in this appeal. Amici regularly litigate other cases in pursuit of the same litigation objectives as DOJ and where it is critical that they can confer freely with DOJ regarding joint litigation strategy. At the same time, Amici have a longstanding interest in ensuring transparency in government decision-making.

Pursuant to Circuit Rule 29(d), undersigned counsel for Amici certify that a separate brief is necessary because it draws on their perspective as civil rights organizations whose communications are at issue to explain: (i) these communications reflect their privileged attorney-work product shared pursuant to a common interest with DOJ; (ii) these communications fall squarely within FOIA

2

Exemption 5, which protects the ability of DOJ and private parties to communicate freely when they actively pursue convergent litigation goals such as vindicating the fundamental right to vote; and (iii) disclosure would have significant adverse implications—for the ongoing litigation and more generally, for civil rights organizations that need to communicate freely with DOJ when they use litigation to vindicate important federal rights.

## INTRODUCTION

Amici are civil rights and racial justice organizations representing private plaintiffs in the previously consolidated litigation captioned *In re Georgia Senate Bill 202*, No. 21-mi-55555 (N.D. Ga.) (the "Consolidated Litigation") (the "Private Plaintiffs").[2]  Amici's privileged communications are at issue in this appeal.  In addition, for decades, Amici have litigated other cases in pursuit of the same litigation objectives as DOJ, and where it is critical that they are able to confer freely with DOJ regarding joint litigation strategy.[3]

FOIA serves a crucial role in ensuring governmental transparency.  As non-partisan civil rights organizations, Amici regularly file FOIA requests of their own.[4]  Although FOIA "reflects a general philosophy of full agency disclosure," *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quotation

---

[2] As set forth in DOJ's Opening Brief at 7–9, the Consolidated Litigation involves six cases challenging Georgia Senate Bill 202 ("SB 202").  DOJ brought one of these cases and the other five were brought by various Private Plaintiffs, including plaintiffs represented by Amici.  The cases were consolidated for discovery but are no longer technically consolidated due to the close of discovery. Amici refer to them as the Consolidated Litigation for ease of reference and because they were consolidated as of the District Court Order on appeal.

[3] *See, e.g.*, *Veasey v. Abbott*, No. 13 Civ. 193 (S.D. Tex. filed June 26, 2013); *N.C. State Conf. of the NAACP v. McCrory*, No. 13 Civ. 658 (M.D.N.C. filed Aug. 12, 2013); *Chisom v. Edwards*, No. 86 Civ. 4075 (E.D. La. filed Sept. 19, 1986).

[4] *See, e.g.*, *Advancement Project v. U.S. Dep't of Homeland Sec.*, 549 F. Supp. 3d 128 (D.D.C. 2021); *Lawyers' Comm. v. U.S. Off. of Mgmt. & Budget*, No. 18 Civ. 645, 2020 WL 6887689 (D.D.C. Nov. 24, 2020); *LDF v. DOJ*, 612 F. Supp. 1143 (D.D.C. 1985).

omitted), it does not provide a hall pass to circumvent basic discovery privileges, such as the attorney work product protection, to which Amici and all other litigants are entitled.

That prohibition is enshrined in the text of FOIA Exemption 5, 5 U.S.C. § 552(b)(5): by its terms, "Exemption 5 withholds from a member of the public documents which a private party could not discover in litigation with the agency." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001) (quotation omitted). The very purpose of Exemption 5 is to protect those documents "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149–50 (1975).

But this is precisely what Plaintiffs-Appellees—the State of Georgia and the Georgia Secretary of State—hope to override. Plaintiffs-Appellees are defendants in the Consolidated Litigation and represented by the same counsel in that case and before this Court. Through this FOIA action, they seek a backdoor to Amici's privileged litigation strategy—*i.e.*, by using FOIA to pursue textbook common-interest attorney work product which could not be obtained through the ordinary discovery process.

Ignoring the strong common interest between DOJ and Private Plaintiffs, the District Court erroneously found that Exemption 5 did not cover the at-issue documents. *See Georgia v. DOJ*, No. 21 Civ. 3138, 2023 WL 2116375 (D.D.C. Feb.

20, 2023) (the "District Court Order").  The District Court's reasoning is plainly incorrect.  *First*, Amici share a clear common legal interest with DOJ to vindicate the right to vote, and their communications are textbook attorney work product that should be privileged from disclosure.  *Second*, the communications fall squarely within Exemption 5 for these same reasons—because DOJ and Private Plaintiffs share a common interest and because the communications are privileged work product.  *Third*, the District Court Order is antithetical to the adversarial system and carries significant negative implications for the Consolidated Litigation and beyond.

## ARGUMENT

**I.   THIS COURT SHOULD BAR THE DISCLOSURE OF AMICI'S COMMON INTEREST ATTORNEY WORK PRODUCT FROM THEIR ONGOING LITIGATION AGAINST PLAINTIFFS-APPELLEES.**

Amici and DOJ share a common legal interest in the Consolidated Litigation, entered into an express common interest agreement, and accordingly, exchanged attorney work product with the expectation that their communications would remain privileged.  Yet the District Court Order allows FOIA to be used to achieve what is prohibited under discovery principles embedded in the common law: exposure of attorney work product to litigation adversaries, absent any special justification for such compelled disclosure.  *See Hickman v. Taylor*, 329 U.S. 495, 512 (1947).  That outcome is untenable because it would drastically revamp our adversarial system, allowing litigants to obtain privileged communications from civil litigation

6

involving agencies simply by filing a collateral FOIA request.

As explained below, neither the text of Exemption 5 nor controlling precedent suggest Congress meant to depart from fundamental common law principles when it enacted FOIA. Instead, "Congress is understood to legislate against a background of common-law . . . principles" and statutes should be interpreted "with the presumption that Congress intended to retain the substance of the common law." *Samantar v. Yousuf*, 560 U.S. 305, 320 n.13 (2010) (citations omitted). To hold otherwise would bypass Congress's legislative process. Moreover, a party's need to communicate with the government in pursuit of common litigation should not require "the loss of its most basic civil discovery privileges." *Hunton & Williams v. DOJ*, 590 F.3d 272, 277–78 (4th Cir. 2010). To Amici's knowledge, until the District Court Order *sub judice*, no court has ever permitted such an intrusion. Thus, Amici first address the District Court's error in depriving them, and DOJ, of the canonical discovery privileges to which all litigants are entitled.

### A. There Is No Dispute That the At-Issue Communications Are Textbook Attorney Work Product.

There is no dispute that the at-issue communications comprise months of litigation strategy and evidentiary development generally entitled to robust protection under the attorney work product doctrine. *See* District Court Order at *12 ("Georgia does not dispute that the withholdings satisfy the ordinary requirements

7

of the . . . work-product privilege[].”); *see also* JA[5] at 123–38 (Vaughn Index).  As

the Declaration of John A. Russ, IV, DOJ Deputy Chief of the Voting Section, avers:

“the withheld information . . . relates to litigation that was ongoing at the time,”

including “documents discussing legal strategy, potential witnesses, types of

discovery needed,” “legal research,” and “attorney notes.”  JA at 29, 34.

Such work product is “virtually undiscoverable,” and in some respects enjoys

even greater protection than the attorney-client privilege.  Unlike the attorney-client

privilege, work product privilege is not generally waived through disclosure to third

parties.  *United States v. Deloitte LLP*, 610 F.3d 129, 135 (D.C. Cir. 2010).  That is

because the work product protection “does not exist to protect a confidential

relationship, but rather to promote the adversary system by safeguarding the fruits

of an attorney’s trial preparations from the discovery attempts of the opponent.”

*United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980)

(“*AT&T*”).  Work product demands this high protection because an attorney must be

able to “assemble information, sift what he considers to be the relevant from the

irrelevant facts, prepare his legal theories and plan his strategy without undue and

needless interference.”  *Hickman*, 329 U.S. at 511.  Amici should not be deprived of

this right simply because the Government is a co-litigant, and especially not when

Amici seek to promote the public interest by vindicating fundamental rights under

---

[5] References to “JA” are to the parties’ Joint Appendix.

8

federal civil rights laws.

### B. The District Court Erred in Failing to Recognize DOJ and Private Plaintiffs' Common Interest.

Under the common interest doctrine, parties with shared litigation interests against a common adversary can share privileged information (including work product), provided: (i) the communications were made pursuant to a matter of common interest; (ii) the communications "were designed to further th[at] effort"; and (iii) the "privilege has not been waived." *In re Sealed Case*, 29 F.3d 715, 719 n.5 (D.C. Cir. 1994) (citation omitted); *see Minebea Co. v. Papst*, 228 F.R.D. 13, 17 (D.D.C. 2005) ("[T]he doctrine permits an exchange of confidential information when the parties have clearly and specifically agreed in some manner to pool information for a common goal.") (citation omitted). Each of these requirements is met here.

#### 1. The parties have a strong common interest in prosecuting their challenges to SB 202.

The District Court wrongly concluded that DOJ and Private Plaintiffs lack a common interest in prosecuting their challenges to SB 202. *See* District Court Order at *13–14. To find a common interest, there is no requirement that the parties' claims be identical; rather, this Circuit has explained that "so long as [the parties] anticipate litigation against a common adversary on the same issue or issues," even with different claims before different courts, there can be "strong common interests

9

in sharing the fruit of the trial preparation efforts." *AT&T*, 642 F.2d at 1288, 1299; *see id.* at 1300 (affirming common interest for non-identical but "overlapping antitrust issues against a common adversary"). The District Court Order is based on its statement that DOJ's and Private Plaintiffs' cases "assert[] separate claims under separate legal theories." District Court Order at *14. But the District Court failed to appreciate the fundamentally co-extensive nature of DOJ's and Private Plaintiffs' facts, claims, and requested remedies—which more than establish their common legal interest in this circumstance.

The parallel lawsuits brought by DOJ and Private Plaintiffs challenge SB 202, Georgia's omnibus law imposing more than a dozen restrictions on the right to vote. The singular goal of these lawsuits is to remedy SB 202's challenged provisions, and while some do assert different claims, they all seek to enjoin the law and no plaintiff disagrees over whether certain provisions should be kept in place or overturned.

The District Court relies primarily on the fact that "DOJ challenges SB 202 only as having a discriminatory purpose in violation of the Voting Rights Act," whereas the lawsuits from Private Plaintiffs raise additional claims for discriminatory results under the Voting Rights Act, as well as claims under the Fourteenth and Fifteenth Amendments to the U.S. Constitution and other constitutional and statutory claims. District Court Order at *14. The District Court's characterization is both inaccurate and elevates form over substance. All but two of

10

the lawsuits filed by the Private Plaintiffs do, in fact, assert intentional discrimination claims, both under Section 2 of the Voting Rights Act (the same provision under which DOJ sued per its statutory authority, *see* 52 U.S.C. § 10308(d)), as well as the Fourteenth and Fifteenth Amendments—claims which require essentially the same factual analysis and overlapping legal factors in the 11th Circuit.  That Private Plaintiffs filed additional, non-intent claims aimed at the same statute in no way diminishes the commonality of their cause with DOJ's.  Indeed, common elements of proof—including a demonstration of discriminatory impact on voters of color— pervade the claims.  *See* JA at 53 (Consolidation Order noting that these cases "involve virtually identical defendants and mostly the same facts and legal issues" and "allegations of race discrimination arguably predominate the complaints").

The at-issue documents themselves also demonstrate that the "parties have clearly and specifically agreed in some manner to pool information for a common goal."  *Minebea*, 228 F.R.D. at 16–17; *see Intex Recreation Corp. v. Team Worldwide Corp.*, 471 F. Supp. 2d 11, 17 (D.D.C. 2007) ("virtually identical" demand letters established "common legal interest" by showing that parties were "working together to enforce" at-issue patent).  For example, one at-issue communication concerns "plans for interviewing witnesses" and is marked "privileged and confidential," "attorney work product," and "common interest privilege."  JA at 124.  In the document, counsel exchange comments and reach

consensus about strategy questions—*i.e.*, expressly "pool[ing] information" and "working together to enforce" their voting rights claims. *Minebea*, 228 F.R.D. at 16–17.

Ignoring this, the District Court emphasizes that the two remaining cases (*VoteAmerica* and *Coalition for Good Governance*) do not assert Voting Rights Act claims and that those plaintiffs subsequently "*objected* to consolidation" for discovery. District Court Order at *15 (emphasis in original). As an initial matter, none of the at-issue communications involve *Coalition for Good Governance*. Moreover, common interest is evaluated at the time the communications were made. *See In re United Mine Workers of Am. Emp. Benefits Plan Litig.*, 159 F.R.D. 307, 314 (D.D.C. 1994). At the time of the communications including *VoteAmerica*, those plaintiffs also were engaged in "litigation against a common adversary on the same issue or issues," *AT&T*, 642 F.2d at 1299—namely, against Plaintiffs-Appellees to enjoin SB 202 provisions. As noted, this Circuit has recognized common interest over "overlapping" issues even where the parties bring different claims in different courts. *Id.* at 1288.[6] Here, of course, these cases all challenge the same state law for violating voters' rights under federal law, include the same

---

[6] As set forth above, *VoteAmerica* counsel shared a common litigation interest with DOJ and the other Private Plaintiffs. At minimum, however, only a handful of the at-issue communications include *VoteAmerica*'s counsel and the District Court Order erred in finding no common interest for the remaining communications on which *VoteAmerica*'s counsel was not present. *See* JA at 123–38.

adversaries, and are before the same court—and were even "strongly encouraged" by the Court to coordinate on areas like discovery.  JA at 55.

In any event, as discussed *infra* at Argument I.B.3, any disclosure to the *VoteAmerica* plaintiffs cannot obviate the work product protection because, even if they did not share a common interest with the other plaintiffs at the time of disclosure (which they did), they are on the same side of the "v" and therefore neither "an adversary [n]or a conduit to an adversary."  *Deloitte*, 610 F.3d at 140.

### 2. The parties' communications were "designed to further" this common interest.

The District Court also failed to recognize that DOJ and Private Plaintiffs' communications were "designed to further" their common legal effort.  *In re Sealed Case*, 29 F.3d at 719 n.5.  The District Court appears to agree that, at minimum, they had memorialized their common interest in writing as of a July 28, 2021 e-mail.  *See* District Court Order at *13; *Intex*, 471 F. Supp. 2d at 16 (explaining that although not required, a "written agreement is the most effective method of establishing the existence of a common interest agreement").  Yet at the same time, it gives short shrift to the actual substance of their communications—all of which further the parties' common litigation interest against their common adversaries.

In addition to the interview plans noted above, other e-mails discussed legal research and strategic considerations such as identification of witnesses, potential discovery, and division of labor.  *See* JA at 34, 123–38.  Based on their content, there

13

should have been no doubt that the communications were in furtherance of a common legal goal.

### 3. The work product protection applies because no communications were shared with adversaries.

Finally, courts consider whether the communications are privileged and whether such privilege has been waived. *See In re Sealed Case*, 29 F.3d at 719 n.5. As discussed, the at-issue communications constitute classic attorney work product. The District Court nonetheless held—without any analysis of the work product doctrine—that common interest had been waived because some communications included non-consolidated plaintiffs who were not, in the Court's view, part of any common interest. *See* District Court Order at *15.

This is incorrect. Whereas disclosure to a third party can waive attorney-client privilege, it does not necessarily waive work product protection. *See AT&T*, 642 F.2d at 1298; *Deloitte*, 610 F.3d at 139. This is because the work product protection "does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent." *AT&T*, 642 F.2d at 1299.

Accordingly, disclosure made "in the pursuit of such trial preparation, and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of the privilege." *Id.* When evaluating waiver, courts consider whether: (i) the disclosure was "to an adversary or a conduit to an adversary," and (ii) there

14

was "a reasonable expectation of confidentiality" in sharing. *Deloitte*, 610 F.3d at 140–41; *see AT&T*, 642 F.2d at 1288 (no waiver where private plaintiff in antitrust lawsuit against AT&T shared its work product with Government, which was engaged in separate antitrust lawsuit against AT&T based on same facts); *United Techs. Corp. v. NLRB*, 632 F. Supp. 776, 784 (D. Conn. 1985), *aff'd*, 777 F.2d 90 (2d Cir. 1985) (no waiver of "Exemption 5 work product privilege" where disclosure consistent with "'maintaining secrecy against opponents'") (quoting *AT&T*, 642 F.2d at 1299)).

The communications here easily meet that test. *First*, the work product was shared only between plaintiffs on the same side of the "v" litigating against their common adversaries—and therefore, disclosure even to plaintiffs' counsel in the non-consolidated cases cannot possibly be construed as being shared with "an adversary or a conduit to an adversary." *Second*, there was plainly "a reasonable expectation of confidentiality" in sharing. This reasonable expectation "may derive from common litigation interests between the disclosing party and the recipient," *Deloitte*, 610 F.3d at 141, which—as discussed—are well established here. But other indicia of confidentiality may also suffice. *See id.* For example, many of the at-issue documents included disclaimers like "privileged and confidential," "attorney work product," and "common interest privilege." JA at 124, 126–27, 129–31, 137. And the parties memorialized their common interest at least as of the July

15

28, 2021 e-mail.  *See* District Court Order at \*13.  Even if the Court disagrees regarding common interest, this work product was clearly exchanged with the expectation that it would remain out of the hands of shared adversaries.  Thus, the District Court Order runs counter to the very purpose of the work product doctrine.

## II.   THE AT-ISSUE COMMUNICATIONS FALL SQUARELY WITHIN EXEMPTION 5, WHICH PROTECTS DOCUMENTS "NORMALLY PRIVILEGED IN THE CIVIL DISCOVERY CONTEXT."

The nature of communications at issue here—privileged attorney work product shared pursuant to an express common interest agreement by counsel working together on Consolidated Litigation—make their protection from disclosure under FOIA an easy call.  Amici concur with DOJ that the at-issue communications fall squarely within Exemption 5 and the District Court Order contravenes its text and fundamental purpose.  *See* DOJ Opening Br. at 32–58.  Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Thus, as the Supreme Court has explained, Exemption 5 is in place to ensure that FOIA does not expose records "normally privileged in the civil discovery context."  *NLRB*, 421 U.S. at 149–50.

In analyzing Exemption 5, courts consider whether: (i) the communication qualifies as inter-agency or intra-agency, and (ii) the communication would be protected from disclosure under one of the civil discovery privileges, such as the

work product protection.  *See Am. Oversight v. U.S. Dep't of the Treasury*, 474 F. Supp. 3d 251, 262 (D.D.C. 2020).  Both prongs of the Exemption 5 inquiry are satisfied, and the District Court erred in concluding otherwise.

### A. The At-Issue Communications Are "Intra-agency" Because They Further DOJ and Private Plaintiffs' Common Litigation Interest.

A party should not be able to do what Plaintiffs-Appellees attempt here: circumvent common law discovery privileges via FOIA.  *See NLRB*, 421 U.S. at 149–50.  Following this logic, the Fourth Circuit and numerous lower courts, including in the D.D.C., have applied Exemption 5 to communications between government agencies and private litigants that further a common litigation interest. This is the only outcome that is consistent with Exemption 5, and there is no reason for this Court to depart from this commonsense approach.

*Hunton*, out of the Fourth Circuit, is instructive: it held that communications exchanged between DOJ and a private litigant qualified as intra-agency because they furthered both parties' shared interest in the outcome of a patent litigation.  *See* 590 F.3d at 281 (discussing *Public Citizen, Inc. v. DOJ*, 111 F.3d 168 (D.C. Cir. 1997) & *Ryan v. DOJ*, 617 F.2d 781 (D.C. Cir. 1980)).[7]  The Court observed, "[b]ecause

---

[7] In *Hunton*, the Fourth Circuit concluded that the at-issue common interest communications qualified as intra-agency under what it called the "consultant corollary" doctrine (a term that also has been used by this Circuit).  590 F.3d at 281 (discussing *Public Citizen*, 111 F.3d 168 & *Ryan*, 617 F.2d 781).  However, as discussed herein, co-litigant communications that further a common legal interest may qualify as "intra-agency," regardless of any consultant relationship.

the common interest doctrine requires the agency to determine that the public interest and the litigation partner's interest have converged, communications between the agency and its partner can be understood as 'intra-agency' for purposes of Exemption 5." *Id.*; *see DOJ v. Julian*, 486 U.S. 1, 18 n.1 (1988) (Scalia, J., dissenting) ("It is textually possible and much more in accord with the purpose of the provision, to regard as an intra-agency memorandum one that has been received by an agency, to assist it in the performance of its own functions, from a person acting in a governmentally conferred capacity other than on behalf of another agency.").

Other persuasive decisions likewise have recognized Exemption 5 in these circumstances. *See, e.g.*, *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 703 F.3d 724, 735 (4th Cir. 2013) (documents between Army and private plaintiff qualified as intra-agency because litigation outcome "was in the public interest according to the Army"); *Lawyers' Comm. v. DOJ*, No. 18 Civ. 167, 2020 WL 7319365 (D.D.C. Oct. 16, 2020) (communications between Ohio Attorney General and United States Solicitor General regarding litigation position qualified as intra-agency where they "shared a common purpose . . . to see the [at-issue] Ohio law upheld"); *Leader v. DOJ*, No. 11 Civ. 540, 2012 WL 13027964, at *4–6 (D.D.C. Aug. 9, 2012) (communications between *qui tam* plaintiff and government regarding "common-interest prior to intervention" qualified as intra-agency); *Am. Small Bus. League v.*

18

*Dep't of Def.*, 372 F. Supp. 3d 1018, 1030 (N.D. Cal. 2019) (communications between Department of Defense and private defendant "concerning a joint litigation strategy" qualified as intra-agency); *Welby v. Dep't of Health*, No. 15 Civ. 195, 2016 WL 1718263, at *6–8 (S.D.N.Y. Apr. 27, 2016) (applying Exemption 5 to communications between federal agencies and private defendant that "concerned a joint litigation strategy").  These principles apply equally here, as detailed *supra* at Argument I.

### B. The District Court's Denial of Exemption 5 Misapprehends the Law and Common Interest Here.

The District Court's reasoning to deny Exemption 5 is incorrect and misapprehends the law and circumstances of DOJ and Private Plaintiffs' common interest here.  *First*, the District Court dismissed *Hunton* for supposedly "bootstrapping" the common-interest issue into the first prong of Exemption 5 which, according to the District Court, should concern only whether communications are inter- or intra-agency.  District Court Order at *10.  But as discussed, when it comes to communications about joint litigation strategy, it is precisely "that convergence of interests that entitles the government to communicate within the terms of the Exemption and to do so in a manner that does not strip it of those deliberative privileges that other litigants enjoy and that are widely recognized as necessary."  *Hunton*, 590 F.3d at 278.   The District Court's erroneous

interpretation would mean that the common-interest privilege and work product protection cannot co-exist with Exemption 5; this is not, and cannot be, the law.

And this does not mean—as the District Court asserted—that *Hunton* disregards the need to give "'independent vitality'" to the two separate requirements of Exemption 5.  District Court Order at *10.  Even where the first prong of Exemption 5 (inter- or intra-agency) is met, the second prong still necessitates a separate inquiry into whether the communications would be privileged in the normal course of discovery.

For example, some cases have declined to give work product protection to "general standards" about agency policies not "prepared in anticipation of specific litigation."  *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 140, 142–43 (D.D.C. 2013).  Others have held that when an attorney obtains a declaration or affidavit from a non-party, drafts thereof are not work product.  *See, e.g.*, *Sequa Corp. v. Gelmin*, No. 91 Civ. 8675, 1993 WL 276081 (S.D.N.Y. July 16, 1993).[8]  These are just two examples where a document exchanged between DOJ and private parties sharing a common litigative interest would still not be protected from disclosure under Exemption 5 because it would not meet its second prong.  As detailed *supra* at Argument I, however, the at-issue documents in this case are

---

[8] Amici express no view about whether the analysis in such decisions is correct.

textbook attorney work product and handily meet this test.[9]

*Second*, the District Court's reliance on *Klamath*, 532 U.S. 1, is misplaced. Citing *Klamath*, the District Court reasoned that Exemption 5 is inapplicable because "private plaintiffs and their lawyers" are "self-interested" rather than impartial third parties. District Court Order at *5–6. But *Klamath* did not consider Exemption 5 in the common interest context at all, let alone undermine its applicability here—where Private Plaintiffs are wholly aligned with DOJ in litigation to advance the public interest by enjoining provisions that violate federal law.

Rather, *Klamath* concerned whether Native-American tribes communicating with a federal agency regarding that agency's allocation of water rights—*i.e.*, as part of the agency's deliberation process, not any ongoing litigation—were sufficiently disinterested in the outcome to satisfy intra-agency requirement. 532 U.S. at 13. Because the Tribes' interests in resource allocation were "necessarily adverse to the interests of competitors," their correspondence failed to qualify under Exemption 5. *Id.* at 14.

By contrast, where (as here) "the government decides to work with a party to achieve a legal result beneficial to both, the danger of 'self-advoca[cy] at the expense

---

[9] Courts apply the same work product analysis under Exemption 5 as in the civil discovery context, with a particular focus on whether the communications are "'routinely' or 'normally' available to parties in litigation and hence are exempt under Exemption 5." *FTC v. Grolier Inc.*, 462 U.S. 19, 27 (1983).

21

of others' subsides." *Hunton*, 590 F.3d at 287 (quoting *Klamath*, 532 U.S. at 12); *see Leader*, 2012 WL 13027964, at *4. "What matters is that there was a unity of interest," such that DOJ and Private Plaintiffs—like any other co-litigants—"could rely on one another's advice, secure in the knowledge that privileged communications would remain just that." *Hunton*, 590 F.3d at 282–83.[10]

## III. THE ADVERSARIAL PROCESS WOULD BE SEVERELY HAMPERED IF FOIA IS INTERPRETED TO ALLOW A BACKDOOR TO PRIVILEGED LITIGATION STRATEGY.

Finally, the District Court acknowledged that disclosure would cause foreseeable harm to interests protected by Exemption 5, by revealing DOJ and Private Plaintiffs' litigation strategy and chilling their ability to coordinate. *See* District Court Order at *31 n.8. Amici underscore that disclosure would carry perverse consequences for them, the Consolidated Litigation, and beyond. This result also would be a sharp departure from fundamental common law principles concerning discovery. If there is any ambiguity about the text of Exemption 5 when read in isolation, the statute should be interpreted to avoid assigning such a dubious intent to Congress. *See Samantar*, 560 U.S. at 320 n.13.

---

[10] The District Court also suggested that DOJ's and Private Plaintiffs' interests are insufficiently aligned because they have "distinct claims and legal theories." District Court Order at *11. But as explained, their claims—to block SB 202 provisions and preserve the fundamental right to vote—are inherently convergent. *See supra* at Argument I.B.1; *Hunton*, 590 F.3d at 280 ("There is no conflict of interest when it comes to advancing the public's interest because the outsider stands to gain personally only if the public's interest is vindicated.").

## A. If the District Court's Ruling Is Affirmed, the Adversarial Process in the Consolidated Litigation Would Be Severely Hampered.

As the Fourth Circuit observed, FOIA does not offer a backdoor to adversaries to seek privileged information because "[t]o allow adverse private litigants to use FOIA to claim this sort of tactical advantage against the government would run counter to the Exemption's goal." *Hunton*, 590 F.3d at 278. Yet the reason Plaintiffs-Appellees filed this FOIA litigation is to seek precisely that privileged information which they could not procure through civil discovery.

As discussed, the at-issue communications constitute textbook attorney work product exchanged pursuant to a common interest. Mr. Russ's Declaration explains that "disclosure would impede the Department's ability to consult with counsel sharing a common interest about . . . litigation strategy issues, which would harm the Department's decision-making processes" and "have a drastic effect on the operation of the Department." JA at 32, 35. He further states: "[t]he ability to coordinate with other plaintiffs allows counsel for the United States to consider steps that will promote the most efficient and effective presentation of its case without needlessly burdening the judge with duplicative testimony, or unnecessarily burdening witnesses with uncoordinated outreach or questioning." JA at 30. As private litigants, Amici concur that disclosure would have untenable consequences.

If the at-issue communications are deemed discoverable, Plaintiffs-Appellees would gain access to months' worth of documents revealing their adversaries'

strategic thinking—critically undermining DOJ and Private Plaintiffs' ability to zealously prosecute their claims.  This would contravene the purpose of Exemption 5.  *See NLRB*, 421 U.S. at 149; *Hunton*, 590 F.3d at 277 ("FOIA was meant to foster political accountability, not to force the United States into a uniquely disadvantaged litigation posture.").  More fundamentally, it would violate the nearly sacrosanct purpose of the work protection "to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent."  *AT&T*, 642 F.2d at 1299.  For this reason alone, this Court should reject Plaintiffs-Appellees' attempt to upend the ground rules of litigation.

And although Plaintiffs-Appellees only seek communications predating the Consolidation Order, *see* District Court Order at *3 n.3, such compelled disclosure would impact the privacy of DOJ and Private Plaintiffs' litigation strategy more broadly.  Previously, DOJ and Private Plaintiffs were able, *inter alia*, to consult regarding legal strategy, serve joint discovery requests, coordinate witnesses, and file joint briefs, relying on basic discovery privileges that allow for their candid cooperation in pursuit a shared "litigative outcome and result."  *Hunton*, 590 F.3d at 279; *see* JA at 29–31.  But should Plaintiffs-Appellees be allowed to treat FOIA as a backdoor for privileged information, DOJ and Private Plaintiffs would be hamstrung from conferring about strategy going forward given the risks of potential

24

future FOIA requests. Indeed, DOJ and Private Plaintiffs have curtailed their communications already.

Such result would place DOJ and Private Plaintiffs who happen to be on the same side of "v" "at a serious disadvantage vis-a-vis [Plaintiffs-Appellees] who are free from any FOIA constraints." *Hunton*, 590 F.3d at 278. "In the absence of coordination, the government—or any party whose interests align with the government's—might find its position strafed inadvertently by '"friendly fire."'" *Id.* at 278–79. And it cannot be squared with this Circuit's observation that "[t]he Government has the same entitlement as any other party to assistance from those sharing common interests." *AT&T*, 642 F.2d at 1300.

The result that Plaintiffs-Appellees urge also would unduly strain judicial resources, in addition to those of non-profit litigants such as Amici. Absent the ability to communicate about joint litigation strategy, DOJ and Private Plaintiffs would likely be compelled to file duplicative motions and briefs, undertake redundant questioning at hearings and trial, and generally avoid coordination for the rest of the litigation. To date, DOJ and Private Plaintiffs have endeavored to streamline their cases wherever practicable, for example by filing a joint preliminary injunction motion on the issue of discriminatory intent under Section 2 of the Voting Rights Act (DOJ and Private Plaintiffs) and the Fourteenth and Fifteenth Amendments (Private Plaintiffs). *See* Mem. in Support of Pls.' Mot. for Prelim. Inj.

at 27–61, *In re Georgia Senate Bill 202*, No. 21-mi-5555 (N.D. Ga. May 30, 2023), ECF No. 566-1.  It was both logical and efficient to file one motion on these claims given their substantially similar legal and factual bases—avoiding the need for the Court to adjudicate duplicative motions or Defendants to respond to duplicative briefs.

In fact, Plaintiffs-Appellees themselves have complained about *insufficient* coordination on the other side.  *See* State Defs.' Mot. to Extend Discovery at 7–8, 9 n.10, *In re Georgia Senate Bill 202*, No. 21-mi-5555 (N.D. Ga. Mar. 3, 2023), ECF No. 453 (contending that "[t]here has been significant lack of coordination amongst the Plaintiffs during discovery" and suggesting that "Plaintiffs agree to file a single summary judgment motion").  Plaintiffs-Appellees' own demands for coordination belie the untenableness of their request now, which—if countenanced—would eviscerate DOJ and Private Plaintiffs' ability to streamline their cases before the court.

## B. Disclosure of the At-Issue Privileged Communications Also Would Have Severe Implications for Other Litigation Contexts.

The result sought by Plaintiffs-Appellees carries implications well beyond the instant situation.  Amici and other civil rights organizations routinely litigate other cases with DOJ as a plaintiff on the same side of the "v."  *See, e.g.*, *Veasey*, No. 13 Civ. 193 (consolidated litigation challenging Texas voter ID law brought by DOJ and private plaintiffs); *McCrory*, No. 13 Civ. 658 (consolidated litigation

26

challenging North Carolina voter restrictions brought by DOJ and private plaintiffs); *Chisom*, No. 86 Civ. 4075 (litigation challenging racial vote dilution in election of Louisiana Supreme Court justices brought by private plaintiffs and in which DOJ has served as intervenor-appellee and amicus).

DOJ and other federal agencies litigate alongside private parties in a variety of other contexts as well, including commercial cases and on the defense side. *See, e.g.*, *Hunton*, 590 F.3d at 275 (arising from private patent dispute in which DOJ intervened); *Waterkeeper All., Inc. v. Wheeler*, 330 F.R.D. 1, 10 (D.D.C. 2018) (permitting utility companies to intervene as defendants in litigation against EPA but ordering defendants "to determine whether their positions may be set forth in a single consolidated filing").

As these cases show, there would be sweeping repercussions if the District Court's ruling is affirmed. For example, where DOJ and the Private Plaintiffs filed a joint preliminary injunction motion, future litigants would likely be wary of similar streamlining for fear of intrusion on their work product. This would engender unnecessary and likely voluminous submissions. The repercussions would extend to myriad other aspects of litigation where coordination might otherwise be possible. Not only would such an approach unfairly heighten the risk of "friendly fire" for DOJ and their co-litigants, but it also would force parties and courts to needlessly wade through duplicative evidence, papers, and proceedings.

27

Furthermore, in the many cases like this one where courts order any coordination between agencies and private litigants, parties would be faced with the impossible choice of either following the court's directives and risking exposure of their internal strategy, or else safeguarding their privilege but disregarding the court. The District Court suggested, given DOJ's institutional power, "if FOIA's disclosure obligations temper an agency's ability to litigate with private parties in secret, this is a feature, not a bug." District Court Order at *11. But nothing about an agency's level of resources is relevant to the application of Exemption 5—and the burden of compelling disclosure of privileged litigation strategy would fall at least as equally on private litigants like Amici. This outcome is also flatly contrary to the purpose of Exemption 5 to protect those documents "normally privileged in the civil discovery context." *NLRB*, 421 U.S. at 149–50. The Court should not compel such an illogical result.

## <u>CONCLUSION</u>

Amici respectfully urge that the District Court Order be reversed.

Dated: September 15, 2023

Respectfully submitted,

<u>/s/ Anuja D. Thatte</u>
Anuja D. Thatte
 D.C. Cir. Bar No. 64773
NAACP Legal Defense and
Educational Fund, Inc.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 682-1300
athatte@naacpldf.org

Janai S. Nelson
 D.C. Cir. Bar. No. 55741
Samuel Spital
 D.C. Cir. Bar No. 62689
Leah C. Aden
 D.C. Cir. Bar No. 55452
Alaizah Koorji
John S. Cusick
Katrina Feldkamp
NAACP Legal Defense and
Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY
(212) 965-2200
jnelson@naacpldf.org
sspital@naacpldf.org
laden@naacpldf.org
akoorji@naacpldf.org
jcusick@naacpldf.org
kfeldkamp@naacpldf.org

Jon M. Greenbaum
 D.C. Cir. Bar No. 53352
Ezra D. Rosenberg
 D.C. Cir. Bar No. 59917
Pooja Chaudhuri
 D.C. Cir. Bar No. 61701
Lawyers' Committee for Civil
Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
(202) 662-8600
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
pchaudhuri@lawyerscommitte.org

Niyati Shah
Terry Ao Minnis
Asian Americans Advancing Justice
| AAJC
1620 L Street NW, Suite 1050
Washington, DC 20036
(202) 296-2300
nshah@advancingjustice-aajc.org
tminnis@advancingjustice-aajc.org

Bradley E. Heard
Pichaya Poy Winichakul
Matletha N. Bennette
Southern Poverty Law Center
150 E. Ponce de Leon Ave., Suite
340

29

Judith Browne Dianis
Matthew A. Fogelson
Angela Groves
Advancement Project Education Fund
1220 L Street NW, Suite 850
Washington, DC 20005
(202) 728-9557
jbrowne@advancementproject.org
mfogelson@advancementproject.org
agroves@advancementproject.org

Decatur, Georgia 30031
(404) 521-6700
bradley.heard@splcenter.org
poy.winichakul@splcenter.org
matletha.bennette@splcenter.org

Jess Unger
Sabrina S. Khan
Southern Poverty Law Center
1101 17th Street NW, Suite 705
Washington, DC 20036
(202) 728-9557
jess.unger@splcenter.org
sabrina.khan@splcenter.org

*Counsel for Amici Curiae*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 6,472 words, exclusive of the components specified by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).  This certification is made in reliance upon the word count function of Microsoft Word.  The undersigned further certifies that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Times New Roman size 14 font.

*/s/ Anuja D. Thatte*
Anuja D. Thatte

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2023, I electronically filed the foregoing amicus brief with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Anuja D. Thatte*
Anuja D. Thatte