[ORAL ARGUMENT NOT YET SCHEDULED]

**No. 23-5083**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

STATE OF GEORGIA and BRAD RAFFENSPERGER, Georgia Secretary
of State, in his official capacity,

Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF JUSTICE,

Defendant-Appellant.

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**CORRECTED REPLY BRIEF FOR DEFENDANT-APPELLANT
UNITED STATES DEPARTMENT OF JUSTICE**

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant
  Attorney General*

SARAH E. HARRINGTON
  *Deputy Assistant Attorney General*

MARK B. STERN
JEFFREY E. SANDBERG
  *Attorneys, Appellate Staff
  Civil Division, Room 7214
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 532-4453*

# TABLE OF CONTENTS

**Page**

GLOSSARY

INTRODUCTION AND SUMMARY ......................................................... 1

ARGUMENT ............................................................................................. 4

I.    THE WORK-PRODUCT PRIVILEGE WAS NOT WAIVED. ............ 4

II.   EXEMPTION 5 PROTECTS WORK PRODUCT
      EXCHANGED CONFIDENTIALLY WITH ALLIED
      COUNSEL ................................................................................... 15

CONCLUSION ....................................................................................... 24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES[*]

**Cases:**                                                            **Page(s)**

*American Mgmt. Servs., LLC v. Department of the Army*,
    703 F.3d 724 (4th Cir. 2013) ................................................................... 18

*Bartenwerfer v. Buckley*,
    598 U.S. 69 (2023) ................................................................................... 22

*Department of the Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001) ............................................................... 16, 18, 19

*Elder v. Holloway*,
    510 U.S. 510 (1994) ................................................................................... 9

*Encino Motorcars, LLC v. Navarro*,
    138 S. Ct. 1134 (2018) ............................................................................. 22

*Flyers Rights Educ. Fund, Inc. v. FAA*,
    864 F.3d 738 (D.C. Cir. 2017) ................................................................. 9

*\*Food Mktg. Inst. v. Argus Leader Media*,
    139 S. Ct. 2356 (2019) ........................................................................ 21, 22

*Georgia Senate Bill 202, In re*, No. 1:21-MI-55555-JPB,
    2023 WL 6628601 (N.D. Ga. Oct. 11, 2023)   ......................................... 14

*Hanson v. U.S. Agency for Int'l Dev.*,
    372 F.3d 286 (4th Cir. 2004) ................................................................... 18

*\*Hickman v. Taylor*,
    329 U.S. 495 (1947) ................................................................................... 4

*HollyFrontier Cheyenne Ref., LLC v. Renewable Fuels Ass'n*,
    141 S. Ct. 2172 (2021) ............................................................................. 22

*\*Hunton & Williams v. U.S. Dep't of Justice*,
    590 F.3d 272 (4th Cir. 2010) .................................................17, 18, 19, 21

*Jordan v. U.S. Dep't of Justice*,
    591 F.2d 753 (D.C. Cir. 1978) (en banc) .................................................. 5

---

[*] Authorities chiefly relied upon are marked with asterisks.

*Judicial Watch, Inc. v. Department of Energy,*
    412 F.3d 125 (D.C. Cir. 2005) .................................................... 16

*Judicial Watch, Inc. v. U.S. Postal Serv.,*
    297 F. Supp. 2d 252, 268 (D.D.C. 2004) .................................... 8

*Koch v. Cox,*
    489 F.3d 384 (D.C. Cir. 2007) .................................................... 9

*Lindsey, In re,*
    158 F.3d 1263 (D.C. Cir. 1998) (per curiam) ...................... 11, 12

*National Ass'n of Criminal Def. Lawyers (NACDL) v. U.S. Dep't of Justice*
    *Exec. Office for U.S. Attys.,*
    844 F.3d 246 (D.C. Cir. 2016) .......................................... 4, 5, 20

*National Ass'n of Home Builders v. Defenders of Wildlife,*
    551 U.S. 644 (2007) .................................................................... 3

*\*National Inst. of Military Justice v. U.S. Dep't of Def.,*
    512 F.3d 677 (D.C. Cir. 2008) .................................................. 16

*\*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) .................................................................. 20

*Rockwell Int'l Corp. v. U.S. Dep't of Justice,*
    235 F.3d 598 (D.C. Cir. 2001) .............................................. 5, 12

*Shea v. Kerry,*
    796 F.3d 42 (D.C. Cir. 2015) ...................................................... 9

*Subpoenas Duces Tecum, In re,*
    738 F.2d 1367 (D.C. Cir. 1984) .................................................. 9

*Teva Pharm., USA, Inc. v. Leavitt,*
    548 F.3d 103 (D.C. Cir. 2008) .................................................... 9

*Trustees of Elec. Workers Loc. No. 26 Pension Tr. Fund v. Trust Fund Advisors, Inc.,*
    266 F.R.D. 1 (D.D.C. 2010) ........................................................ 6

*\*United States v. AT&T Co.,*
    642 F.2d 1285 (D.C. Cir. 1980)...................2, 5, 6, 7, 8, 10, 11, 12

*\*United States v. Deloitte LLP,*
    610 F.3d 129 (D.C. Cir. 2010) ...........................1, 5, 6, 9, 10, 12

*United States v. Hillie*,
    39 F.4th 674 (D.C. Cir. 2022) ...................................................... 9

*United States v. Sanmina Corp.*,
    968 F.3d 1107 (9th Cir. 2020) ...................................................... 6

*United States v. Weber Aircraft Corp.*,
    465 U.S. 792 (1984) ...................................................... 20

*Yee v. City of Escondido*,
    503 U.S. 519 (1992) ...................................................... 9

**Statutes:**

5 U.S.C. § 552(b)(5) ...................................................... 2

**Rules:**

Fed. R. Civ. P. 26(b)(3)(B) ...................................................... 4

**Legislative Materials:**

S. Rep. No. 114-4 (2015) ...................................................... 21

**Other Authorities:**

2 Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*
    (5th ed. 2007) ...................................................... 6

*Manual for Complex Litigation, Fourth* § 10.222 (2004) ................... 23

6 Moore et al., *Moore's Federal Practice—Civil* § 26.70[6][a] (2023) ................. 6

*Restatement* (*Third*) *of the Law Governing Lawyers* (Am. Law Inst. 2000):
    § 76(1) ...................................................... 12
    § 76 cmt. b ...................................................... 12
    § 91(4) ...................................................... 6
    § 91 cmt. b ...................................................... 5, 6

8 Wright & Miller, *Federal Practice and Procedure* § 2024 (3d ed. 2023) ............ 6

# GLOSSARY

| | |
|---|---|
| DOJ | Department of Justice |
| FOIA | Freedom of Information Act |
| Gov't Br. | Opening Brief for Defendant-Appellant United States Department of Justice (filed Sept. 8, 2023) |
| J.A. | Joint Appendix |
| NACDL | National Association of Criminal Defense Lawyers |
| Resp. Br. | Brief of Appellees State of Georgia et al. (filed Oct. 20, 2023) |
| Restatement | Restatement (Third) of The Law Governing Lawyers |

## INTRODUCTION AND SUMMARY

The United States and numerous private plaintiffs are currently litigating overlapping actions in the Northern District of Georgia against appellee State of Georgia and various defendant-intervenors. In that litigation, all parties expressly stipulated that communications among allied counsel—whether on the plaintiffs' side or on the defendants' side—were not subject to discovery. Nevertheless, Georgia now demands under the Freedom of Information Act (FOIA) the very communications it concededly cannot and will not obtain through civil discovery in the court proceeding to which its request relates.

The district court fundamentally erred in allowing FOIA to be used as a means of upending discovery agreements in separate litigation. Our opening brief explained that the records at issue are privileged attorney work product protected by Exemption 5 and that Exemption 5 applies to communications between government and allied counsel in litigation. Plaintiffs' brief fails to come to grips with the errors underlying the court's analysis of both questions.

**I.** On the question of privilege, plaintiffs do not dispute that the records at issue are classic attorney work product, and they ultimately recognize that under this Court's precedent, work-product protection is waived only by voluntary disclosure "to an adversary or a conduit to an adversary," not to friendly co-litigants. *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir.

2010); *see United States v. AT&T Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) ("A disclosure made in the pursuit of [an attorney's] trial preparation, and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of the privilege.").  Plaintiffs instead contend that the government, despite having argued those same principles before the district court, has somehow forfeited this Court's ability to apply the correct law by allegedly failing to distinguish the attorney-client and attorney-work-product analyses in sufficiently emphatic terms.  That contention is seriously mistaken, as is their alternative argument that a "valid common interest agreement" (*e.g.*, Resp. Br. 3, 42) should be required to avoid waiver of work-product privilege.

**II.**  On the statutory issue, plaintiffs offer nothing beyond the same erroneous reasoning that, as our opening brief explained, reflects a fundamentally flawed approach to statutory interpretation.  Exemption 5 is indisputably intended to incorporate basic litigation privileges, including the attorney work-product doctrine, and this Court has repeatedly interpreted the phrase "intra-agency memorandums or letters" in Exemption 5 to encompass not only memoranda between agency employees but also certain communications with non-employees that are generated or shared in furtherance of the agency's functions.  5 U.S.C. § 552(b)(5).  Though those decisions, issued in the context of agency consultants, did not address

common-interest litigation communications, they nonetheless definitively establish that Exemption 5 does not carry the constrained meaning that plaintiffs suggest.  And, here, all traditional tools of statutory interpretation demonstrate that Congress did not intend the phrase "intra-agency memorandums or letters" to exclude privileged communications exchanged among allied counsel in the service of the agency's litigation mission.  The judgment should be reversed.[1]

---

[1] Plaintiffs are wrong that this Court must "*first*" consider "Exemption 5's threshold intra-agency requirement" before addressing other Exemption 5 issues.  Resp. Br. 17; *see also* Resp. Br. 39.  Unlike questions of Article III jurisdiction, merits issues need not be addressed in any particular order.  That much is demonstrated by plaintiffs' own briefing in district court, which addressed "Exemption 5's internality requirement" as a tertiary argument.  *See* Pls. Mem. in Supp. of Cross-Mot. for S.J. 2, 18-22, Dkt. No. 15-1 (arguing this condition as "one final shortcoming" in the case).  Here, it is appropriate to confirm that the case actually concerns privileged attorney work product before addressing the statutory question whether Congress intended Exemption 5 to compel the disclosure of such work product.  In all events, regardless of the order in which this Court chooses to address the issues, any reasonable interpretation of Exemption 5 requires consideration of that provision in its entirety.  *See National Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.") (quotation marks omitted).

**ARGUMENT**

## I.    THE WORK-PRODUCT PRIVILEGE WAS NOT WAIVED

**1.**    This case concerns quintessential attorney work product.  All of the records at issue are confidential memoranda or email communications created either by government counsel or by private counsel in aid of active litigation.  These materials proposed and discussed potential litigation strategies; developed collaborative approaches for interviewing witnesses and obtaining evidence through discovery; shared legal research relevant to disputed issues in the litigation; discussed positions that the cooperating plaintiffs might take on one another's claims; and proposed possible responses to inquiries received from persons outside the cooperating plaintiff group.  J.A. 29-30 (declaration); J.A. 123-38 (*Vaughn* index).

The withheld or redacted materials thus reflect the kind of "attorney's mental impressions, conclusions, opinions or legal theories" for which the work-product doctrine was created.  *Hickman v. Taylor*, 329 U.S. 495, 508 (1947); *see National Ass'n of Criminal Def. Lawyers* (*NACDL*) *v. U.S. Dep't of Justice Exec. Office for U.S. Attys.*, 844 F.3d 246, 251 (D.C. Cir. 2016) (work-product doctrine "'provid[es] a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories'"); Fed. R. Civ. P. 26(b)(3)(B) (specifically barring

4

disclosure of "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation"). Plaintiffs do not argue otherwise.

Plaintiffs' argument, instead, is that government and private counsel somehow waived work-product protection by using the materials for their intended purpose: to prepare for discovery and trial. Work-product privilege exists to further and "protect 'the integrity of the adversary trial process itself,'" *NACDL*, 844 F.3d at 250-51 (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 775 (D.C. Cir. 1978) (en banc)), by incentivizing preparation by trial counsel and preventing compulsory disclosure of that preparation to "opposing parties," *AT&T*, 642 F.2d at 1299. Indeed, "[e]ffective trial preparation often entails disclosing work product to coparties and nonparties." *Restatement* (*Third*) *of The Law Governing Lawyers* § 91 cmt. b (2000) (*Restatement*).

This Court has repeatedly explained that "disclosure to a third party does not waive the [work-product] privilege 'unless such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary.'" *AT&T*, 642 F.2d at 1299; *see Deloitte*, 610 F.3d at 139-40 (similar); *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 605

(D.C. Cir. 2001) (similar).[1]  "A disclosure made in the pursuit of [a party's] trial preparation, and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of the privilege." *AT&T*, 642 F.2d at 1299.

In deciding whether a voluntary disclosure to a third party is one likely to reach an adversary, this Court considers several factors, including "whether the disclosing party had a reasonable basis for believing that the recipient would keep the disclosed material confidential." *Deloitte*, 610 F.3d at 141. A formal confidentiality agreement—though it would be sufficient—is not required, because "[a] reasonable expectation of confidentiality" may readily be inferred from the existence of "common litigation interests between the disclosing party and the recipient." *Id.*  As the Court explained, "when common litigation interests are present, 'the transferee is not at all likely to

---

[1] *See also, e.g.*, *Trustees of Elec. Workers Loc. No. 26 Pension Tr. Fund v. Trust Fund Advisors, Inc.*, 266 F.R.D. 1, 13-15 (D.D.C. 2010) (discussing this Court's "unbroken string of precedents" holding that "a party only forfeits the work-product privilege by disclosure … that is inconsistent with preserving the secrecy of that information from an adversary"). *Accord, e.g.*, *United States v. Sanmina Corp.*, 968 F.3d 1107, 1120-21 & n.7 (9th Cir. 2020) (collecting cases supporting the "principle that the voluntary disclosure of work product waives the protection only when such disclosure is made to an adversary or is otherwise inconsistent with the purpose of work-product doctrine—to protect the adversarial process"); *Restatement* § 91(4) & cmt. b; 6 *Moore's Federal Practice–Civil* § 26.70[6][a] (2023); 8 Wright & Miller, *Federal Practice and Procedure* § 2024 nn.61-67 and accompanying text (3d ed. 2023); 2 Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 1040-42 (5th ed. 2007).

disclose the work product material to the [shared] adversary.'" *Id.* (quoting *AT&T*, 642 F.2d at 1299). The existence of common litigation interests may in turn be acknowledged and memorialized in writing, but no formal common-interest agreement is necessary. As the government explained in its district-court briefing, for purposes of work-product waiver analysis, "the existence of common interests is relevant not for some talismanic reason, but because it demonstrates that the recipient of the privileged material is not likely to further disclose the information to litigation adversaries." Reply Mem. in Supp. of Def.'s Mot. for S.J. and Mem. in Opp'n to Pls.' Cross-Mot. for S.J. 12, Dkt. No. 18 (Gov't S.J. Reply/Opp'n).

**2.** As explained in our opening brief (Gov't Br. 27-28), the district court failed to apply these principles and instead erroneously conflated the waiver standard for attorney work-product privilege with the waiver standard for attorney-client privilege. But the "strict standard of waiver in the attorney-client privilege context" is not "appropriate for work product cases." *AT&T*, 642 F.2d at 1299. The court's error is surprising given that the government had repeatedly cited *AT&T* below and expressly argued that "the attorney work-product doctrine … is not waived where the 'disclosure to a third party [] promotes the client's trial strategy and is consistent with maintaining secrecy against trial opponents.'" Mem. in Supp. of Def.'s Mot. for S.J. 18, Dkt. No.

7

14-1 (Gov't S.J. Mot.) (quoting *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 268 (D.D.C. 2004)).[2]  And, as explained, the government argued that the communications at issue between the Department of Justice (DOJ) and private plaintiffs' counsel were made to advance their respective litigation interests.

Plaintiffs offer no sound basis for their assertion that the government has somehow "forfeited" application of the correct legal standard on appeal (Resp. Br. 17, 42, 45-46).  The government has consistently opposed any suggestion that the work-product privilege was waived; has consistently explained that no waiver occurs if "disclosure to a third party [] promotes the client's strategy and is consistent with maintaining secrecy against trial opponents," Gov't S.J. Mot. 18; *see also supra* p. 4 & n.2; and has consistently cited this Court's precedent recognizing that the waiver analysis for work-product privilege differs from that for attorney-client privilege, *see, e.g.*, *AT&T*, 642 F.2d at 1299.

---

[2] *See also* Gov't S.J. Reply/Opp'n 12 (arguing that "waiver of the work-product doctrine should not be found lightly, and '[a] disclosure made in the pursuit of such trial preparation, and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of the privilege'") (quoting *AT&T*, 642 F.2d at 1299)); *id.* at 17 (emphasizing *AT&T*'s holding that work-product privilege was not waived where one party disclosed to friendly party the "fruit of its analysis" concerning "overlapping antitrust issues [shared] against a common adversary") (quoting *AT&T*, 642 F.2d at 1300).

The district court's failure to apply this Court's precedent cannot be attributed to the government.[3]

**3.**  To the extent plaintiffs try to defend the district court's conclusion, they confuse the question whether parties have common interests with the question whether parties have signed a formal common-interest agreement. Plaintiffs mistakenly assert that the government must "demonstrate that it had a valid common interest agreement in place" to avoid waiver of work-product privilege.  Resp. Br. 42.  Though such an agreement indeed existed here, *see* Gov't Br. 10, 29-30; *infra* pp. 9-10, this Court's cases have never held a written agreement to be required to avoid waiver of work-product protections.  Rather, the "existence of common interests between transferor and transferee is *relevant* to deciding whether [a particular] disclosure is consistent with the nature of the work product privilege."  *Deloitte*, 610 F.3d at 141 (emphasis added) (quoting

---

[3] Plaintiffs' true criticism appears to be that the government has further elaborated its argument by citing additional authorities.  But "[DOJ]'s effort to refine and clarify its analysis in light of the district court's ruling cannot be transmuted into a waiver of its arguments on appeal." *Teva Pharm., USA, Inc. v. Leavitt*, 548 F.3d 103, 105 (D.C. Cir. 2008); *see also Yee v. City of Escondido*, 503 U.S. 519, 534 (1992); *Shea v. Kerry*, 796 F.3d 42, 54 (D.C. Cir. 2015); *Koch v. Cox*, 489 F.3d 384, 391 (D.C. Cir. 2007).  And in all events, "once an argument is before [the Court], it is [the Court's] job to get the relevant case law right." *United States v. Hillie*, 39 F.4th 674, 684 (D.C. Cir. 2022) (quoting *Flyers Rights Educ. Fund, Inc. v. FAA*, 864 F.3d 738, 748 n.6 (D.C. Cir. 2017)); *see also Elder v. Holloway*, 510 U.S. 510, 515 n.3 (1994) (criticizing approach that would "occasion appellate affirmation of incorrect legal results").

*AT&T*, 642 F.2d at 1299).  Again, the reason such common interests are relevant is not because they are doctrinally required or must be memorialized; rather, it is because, where a court perceives that common interests exist, those interests can justify an inference "that the recipient would keep the disclosed material confidential" from the shared adversary, consistent with the purposes of work-product doctrine.  *Deloitte*, 610 F.3d at 141 (emphasis added) (quoting *AT&T*, 642 F.2d at 1299).  The evidentiary relevance of common interests thus does not depend on the existence of any written agreement.  And here, as discussed, the government's and private plaintiffs' shared interest in prosecuting their overlapping race-discrimination claims clearly support the inference that they would keep their shared materials confidential.

This Court's decision in *AT&T*, on which plaintiffs claim to rely, in fact directly refutes their argument.  That case concerned whether MCI waived its work-product privilege as to certain documents it shared with counsel for the United States.  Though MCI and the United States had each brought antitrust cases against AT&T (in Illinois and the District of Columbia respectively), the two parties did not have any common-interest agreement in place.  Moreover, MCI and the United States asserted distinct claims relating to different

10

markets,[4] and they had a clear "*divergence* of interests" as to strategy in their respective lawsuits. *AT&T*, 642 F.2d at 1293-94 (emphasis added).

This Court nonetheless readily concluded that MCI had not waived any work-product privilege by sharing its preparatory materials with the United States. The Court explained that "[a] disclosure made in the pursuit of [counsel's] trial preparation" and that is "not inconsistent with maintaining secrecy against opponents" does not defeat work-product protection. *AT&T*, 642 F.2d at 1299. There, the United States was "not at all likely to disclose the work product material to [MCI's] adversary" because MCI and the United States had "common interests" on the matter to which the work product related and "anticipate[d] litigation against [their] common adversary" on those issues. *Id.*; *see also, e.g.*, *id.* (emphasizing that, for purposes of work-product analysis, "'common interests' should not be construed as narrowly limited to co-parties").

The other cases cited by plaintiffs likewise do not advance their argument. As explained in our opening brief (Gov't Br. 23 n.4), this Court's decision in *In re Lindsey*, 158 F.3d 1263 (D.C. Cir. 1998) (per curiam), did not

_____

[4] While MCI claimed that AT&T was "monopolizing and attempting to monopolize the market for long-distance telephone communications," the government "charged AT&T with monopolizing, attempting to monopolize, and conspiring to monopolize markets for telecommunications services and equipment" more broadly. *AT&T*, 642 F.2d at 1288.

adjudicate any claim of work-product privilege, and the panel's assumption that the waiver standard would be similar for "attorney-client *or work product* confidences" was mistaken dictum. *Id.* at 1282 (emphasis added). And *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1372 (D.C. Cir. 1984), concerned selective disclosure of work product to adversaries, not disclosure of work product to allied parties outside of a common-interest agreement. *See id.* at 1372 (concluding that Tesoro waived its privilege by sharing documents with the Securities and Exchange Commission because "[t]here is no question that the SEC was an adversary to Tesoro"). Neither case supports plaintiffs' theory that a formal common-interest agreement is required to avoid work-product waiver, and *Deloitte*, *Rockwell*, and *AT&T* are clearly to the contrary.

**4.** As our opening brief further explained, even assuming that this Court were to accept plaintiffs' contention that it should apply the law of attorney-client privilege rather than the law of work-product privilege, reversal would still be required. Under attorney-client privilege, if separate counsel for clients with common interests in a matter "agree to exchange information concerning the matter," the privilege is not waived but persists as against third parties. *Restatement* § 76(1). This rule "permits persons who have common interests to coordinate their positions without destroying the privileged status of their communications." *Id.* § 76 cmt. b. The common-interest arrangement entered

into by DOJ and private plaintiffs in the Georgia voting-rights litigation is a paradigmatic application of these principles. *See* Gov't Br. 28-30.

Plaintiffs emphasize that "DOJ opted to challenge a narrower set of [S.B. 202]'s provisions than did the private Plaintiffs," Resp. Br. 1; *see also* Resp. Br. 5-6, 18, 53, 54, yet fail to explain why that fact renders the overlap as to the parties' allegations of intentional discrimination any less complete. *Cf.* Resp. Br. 56 (conceding that DOJ's and other plaintiffs' lawsuits "overlap to varying degrees").[5] As to that overlap, the private plaintiffs were "acting in support of the same interests DOJ was advancing," Resp. Br. 2; indeed, their interests were sufficiently congruent that DOJ and four other plaintiff groups agreed to file a single preliminary-injunction motion. Such joint filings—which benefit all parties by streamlining the litigation—would become practically impossible under plaintiffs' cramped view of the common-interest doctrine.

---

[5] Plaintiffs mistakenly hypothesize that the United States did not present its claims in constitutional terms to avoid any risk of "permanently pre-empt[ing] [federal] legislation." Resp. Br. 56-57. As already explained (Gov't Br. 31-32), the standards for proving discriminatory purpose under Section 2 of the Voting Rights Act and intentional race discrimination under the Constitution are identical, so the statutory or constitutional label makes no practical difference. In all events, plaintiffs fail to explain why a holding that the Georgia legislature acted unlawfully by legislating with racially discriminatory intent would do anything to "pre-empt" Congress's ability to enact voting measures that are not motivated by invidious intent.

Plaintiffs stress that the United States chose to bring its own lawsuit "[r]ather than intervening in any of the lawsuits brought by the private entities," Resp. Br. 7; *see also* Resp. Br. 18, 29, 41, but the parties to a common-interest agreement need not be designated as coparties on the same docket sheet. Here, the Attorney General acted well within his statutory discretion in choosing to bring the government's own case in parallel rather than singling out one case among many for government intervention. In all events, the district court ultimately consolidated the relevant matters into a single case, in which the United States and other plaintiffs filed a joint motion for preliminary injunction.[6]

Lastly, and unsurprisingly, plaintiffs offer nothing in defense (Resp. Br. 55 n.15) of the district court's erroneous reasoning that DOJ waived its work-product protection by purportedly sharing relevant documents with counsel in *VoteAmerica* and *Coalition for Good Governance*, the two cases not involving race-discrimination claims. As explained (Gov't Br. 30-31), none of the withheld or redacted records were shared with counsel in *Coalition for Good Governance*, and

---

[6] Plaintiffs emphasize (Resp. Br. 9-10) that the Georgia district court recently denied that joint motion. *See In re Georgia Senate Bill 202*, No. 1:21-MI-55555-JPB, 2023 WL 6628601, at *11-20 (N.D. Ga. Oct. 11, 2023) (Boulee, J.). Though the federal government disagrees with that decision, nothing about the decision casts any doubt on the commonality of interests among DOJ and the private plaintiffs who jointly litigated that motion.

the vast majority of records (*i.e.*, all except the two emails addressed in Gov't Br. 29 n.7) were not shared with counsel for *VoteAmerica* either.  *Cf.* J.A. 123-138 (*Vaughn* index).  Even on its own terms, the district court's theory of waiver was in error, and plaintiffs do not argue otherwise.  In any event, once the correct body of law is applied, *see supra* pp. 4-7, it becomes undeniably clear that work-product privilege was not waived.

## II.   FOIA EXEMPTION 5 PROTECTS WORK PRODUCT EXCHANGED CONFIDENTIALLY WITH ALLIED COUNSEL

The district court also erred in ruling that Exemption 5's protection for "inter-agency or intra-agency memorandums or letters" excludes attorney work product shared confidentially among litigating counsel pursuant to a common-interest arrangement.  Our opening brief thoroughly explained why the district court's interpretation was wrong as a matter of text, context, legislative intent, and statutory history, *see* Gov't Br. 32-49, and plaintiffs largely fail to respond to that analysis.

**1.**  Plaintiffs' principal response is to urge that "[t]his case begins and ends with FOIA's statutory text" and that "under the clear text of Exemption 5," an agency cannot "withhold its communications with non-governmental entities" on the theory that such communications are necessarily "neither 'inter-agency' nor 'intra-agency.'"  Resp. Br. 19.  This Court has repeatedly rejected that assertion, both before and after the Supreme Court's decision in

15

*Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001), on which plaintiffs mistakenly attempt to rely. *See, e.g., National Inst. of Military Justice v. U.S. Dep't of Def.*, 512 F.3d 677, 684 (D.C. Cir. 2008) (reaffirming that it is "well established in this circuit" that "a document need not be created by" or "remain in the possession" of agency employees "in order to qualify as 'intra-agency'" within the meaning of Exemption 5's text) (quoting *Judicial Watch, Inc. v. Department of Energy*, 412 F.3d 125, 130 (D.C. Cir. 2005)). Indeed, plaintiffs repeatedly acknowledge this precedent (*e.g.*, Resp. Br. 27, 32, 36), and so it is unclear why they believe that a panel would or could adopt their categorical, constrained reading of Exemption 5's text.

**2.** Insofar as plaintiffs acknowledge "exceptions" to their erroneous categorical interpretation, they cite the three circumstances discussed by the district court: "(1) where the private party is sufficiently disinterested; (2) where the agency solicited the communications; or (3) where an agency seeks a consultant's expertise." Resp. Br. 27 (citing J.A. 169). As our opening brief explained, these principles, even on their own terms, do not reflect doctrinal requirements. *See* Gov't Br. 50-52. For example, this Court has never held that the "intra-agency memorandums or letters" provision is satisfied only where a consultant has no "independent interests" (Resp. Br. 15), as plaintiffs themselves acknowledge (Resp. Br. 27 n.6). This Court likewise has not

demanded proof that the agency acted entirely at its own initiative to "solicit" outside advice (although DOJ's decision to participate in a common-interest agreement would in any event constitute a solicitation of cooperation). And this Court also has never required proof that the non-agency employee possesses "distinctive and unique" expertise unavailable at the agency itself. *Cf.* Resp. Br. 35.

In any event, the district court's test would be apposite only where a court is determining whether a consultant providing predecisional, deliberative advice to inform agency policymaking should be deemed to have acted "intra-agency." The term "consultant corollary" is often used as shorthand to describe such cases involving deliberative materials, but it is not an apt descriptor of all cases in which a court must determine whether a record reflects "inter-agency or intra-agency memorandums or letters" for purposes of Exemption 5. This Court has never suggested otherwise, and perhaps unsurprisingly, few litigants outside the Fourth Circuit have ever even tried to use FOIA to obtain privileged litigation communications exchanged among the litigant's adversaries.

As discussed in our principal brief, the Fourth's Circuit's analysis in *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272 (4th Cir. 2010) correctly applied the principles recognized by this Court and other courts in holding that

communications pursuant to a common interest-arrangement of the kind at issue here fall within the scope of Exemption 5. That court noted in particular this Court's precedents from "[b]oth before and after *Klamath*," explaining that the communications at issue in those cases "can be considered 'intra-agency'" because the "consultant [was] collaborating with an agency in the agency's pursuit of the public interest." *Id.* at 279-80. Similarly here, "[b]y cooperating with the agency in pursuit of the agency's own litigation aims, the litigation partner in a limited sense becomes a part of the enterprise that the agency is carrying out." *Id.* at 280. The "communications between the agency and its partner … [can] be understood as 'intra-agency' for purposes of Exemption 5" because the cooperation takes place only once an agency has "determine[d] that the public interest and the litigation partner's interest have converged" and has affirmatively invited the partner to play a coordinating role. *Id.*; *see also American Mgmt. Servs., LLC v. Department of the Army*, 703 F.3d 724, 734 (4th Cir. 2013); *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 294 (4th Cir. 2004).

Plaintiffs thus miss the mark in declaring that the government is asking "this Court to ignore its own precedent in favor of a decision from the Fourth Circuit." Resp. Br. 37. For the reasons discussed, this Court's decisions are

18

entirely consistent with the Fourth Circuit's decision, which drew expressly upon the reasoning of this Court's precedents interpreting Exemption 5.

**3**.  Plaintiffs do not advance their argument by insisting that "[i]f it followed the Fourth Circuit's holding, this Court would remove its carefully constructed checks on an expansive reading of the consultant corollary, and would thus drain Exemption 5's threshold requirement of its 'independent vitality[.]'"  Resp. Br. 37 (quoting *Klamath,* 532 U.S. at 12).  The Fourth Circuit did not collapse the privilege and "intra-agency" inquiries, and we have not suggested that the Court should do so here.  Distinct rationales apply for each of Exemption 5's "two conditions."  *Klamath*, 532 U.S. at 8.  The withheld records "fall within the ambit of a privilege against discovery," *Klamath*, 532 U.S. at 8, because they are attorney work product.  *See* Gov't Br. 20-32.  And they are "intra-agency memorandums or letters" because they were created or shared in furtherance of a common-interest arrangement affirmatively authorized by the Department of Justice to advance its litigating functions.  *See* Gov't Br. 32-49.  The privileged records at issue here are protected by Exemption 5 not simply for the negative reason that their privilege was never waived, but rather, for the affirmative reason that the government properly enlisted allied counsel as "part of the enterprise that the agency [was] carrying out."  *Hunton & Williams*, 590 F.3d at 280.

**4.** Plaintiffs continue to offer no plausible rationale as to why Congress, both in enacting and in re-enacting Exemption 5, could have intended the term "intra-agency memorandums or letters" to substantially impair the government's ability to litigate by allowing parties suing or defending suit by the United States to obtain through FOIA what they could not obtain through discovery. On the contrary, the Supreme Court has "consistently rejected" interpretations of Exemption 5 that would "circumvent[]" basic litigation privileges and "create an anomaly in that the FOIA could be used to supplement civil discovery[.]" *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 801-02 (1984) (collecting cases). Congress enacted Exemption 5 to ensure that documents "normally privileged in the civil discovery context" could not be obtained through the backdoor of FOIA. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149-50 (1975). Indeed, "Congress had the attorney's work-product privilege specifically in mind when it adopted Exemption 5." *NACDL*, 844 F.3d at 251 (quoting *Sears*, 421 U.S. at 154). And from the outset, that privilege has protected communications among allied attorneys. *See* Gov't Br. 24-25 & n.5, 43-44.[7]

---

[7] Plaintiffs' stated reasons for seeking opposing counsel's privileged communications—in addition to being inconsistent with Congress's manifest intention to protect attorney work product—also make no sense on their own terms. Plaintiffs assert that disclosure is necessary for the public to understand

*Continued on next page.*

Nothing in the text or history of the statute suggests that Congress, in enacting Exemption 5 in 1966, intended FOIA to derogate from the scope of the common-law privilege and thereby "force the United States into a uniquely disadvantaged litigation posture." *Hunton & Williams*, 590 F.3d at 277-78. Indeed, when Congress adopted a variety of other amendments to FOIA in 2016, it reenacted the relevant language of Exemption 5 without change and reaffirmed that it protects documents covered by "attorney work product doctrine." S. Rep. No. 114-4, at 10 (2015). Congress thereby left undisturbed the holdings of the Fourth Circuit and other federal courts that have applied Exemption 5 to common-interest arrangements. *See* Gov't Br. 38-41 & n.11.

Plaintiffs are on no firmer ground in asking the Court to accept their position on the ground that FOIA's exemptions should be "construed narrowly" (Resp. Br. 14, 25). In *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019), on which plaintiffs purport to rely, the Supreme Court explicitly rejected the contention that its analysis should be guided by the proposition that FOIA exemptions should be narrowly construed. The Court explained that FOIA's exemptions are "as much a part of FOIA's purposes and policies as the statute's disclosure requirement" and that courts "have no

---

"the genesis" of DOJ's decision to file suit. Resp. Br. 1, 9. But none of the withheld or redacted documents at issue are germane to that interest because they all significantly post-date DOJ's decision to sue.

license to give [those] exemptions anything but a fair reading." 139 S. Ct. at
2366 (alterations omitted) (quoting *Encino Motorcars, LLC v. Navarro*, 138 S. Ct.
1134, 1142 (2018)).  The Supreme Court thus abrogated the decisions of
various courts of appeals that had done precisely what plaintiffs now urge:
"arbitrarily *constrict*[]" the text of a FOIA exemption.  *Id.* (emphasis in
original).  Because FOIA, like all calibrated statutory schemes, does not
"pursue[] a single policy at all costs," *Bartenwerfer v. Buckley*, 598 U.S. 69, 81
(2023), plaintiffs are wrong to assume that courts must always "choose th[e]
interpretation most favoring disclosure."  Resp. Br. 26; *see also HollyFrontier
Cheyenne Ref., LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172, 2181 (2021)
(reaffirming that "statutory exceptions are to be read fairly, not narrowly").

    **5.**  As discussed in our opening brief, plaintiffs' position, if adopted,
would not only prejudice the government in a manner unintended by Congress
but also operate to the detriment of other litigants and the courts.  *See* Gov't Br.
56-57.  Plaintiffs offer no argument to the contrary.  The district court here
ordered disclosure not only of emails drafted by DOJ attorneys, but also of
emails and materials authored by private counsel, who shared them only under
expectations of confidentiality long understood to be legally valid.  *See* Amicus
Br. of NAACP *et al.* 15-16.  If private litigants cannot coordinate efforts with

DOJ in appropriate instances, it would harm their ability to efficiently and effectively present their case.

Plaintiffs' position would similarly disserve the Judicial Branch's ability to manage multiparty litigation involving federal parties—such as by directing or encouraging the joint conduct of discovery or the preparation of joint motions or memoranda of law—would be effectively eviscerated. *See Manual for Complex Litigation, Fourth* § 10.222 (2004) ("Communication among the various allied counsel and their respective clients should not be treated as waiving work-product protection or the attorney-client privilege."). Nothing in the text, context, or history of FOIA suggests that Congress intended to divest federal courts of power to efficiently manage their dockets and supervise the conduct of multiparty litigation.

In sum, this suit is an undisguised attempt to circumvent the limitations of civil discovery—limitations to which Georgia itself agreed before invoking FOIA as an expedient alternative.[8]  Exemption 5 precludes that tactic.

---

[8] Plaintiffs now suggest that they agreed to these limitations not because they agree that co-counsel communications are privileged work product but, rather, because logging such communications would be "overwhelm[ing]." Resp. Br. 58.  Plaintiffs' asserted motivation is of no consequence.  Their statement suggests, however, that their own coordination with defendant-intervenors or other aligned parties may have been extensive, and they surely would resist any attempt to discover their own work product.

## CONCLUSION

The judgment of the district court should be reversed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

SARAH E. HARRINGTON
*Deputy Assistant Attorney General*

MARK B. STERN
*/s/ Jeffrey E. Sandberg*
JEFFREY E. SANDBERG
*Attorneys, Appellate Staff*
*Civil Division, Room 7214*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 532-4453*
*jeffrey.e.sandberg@usdoj.gov*

*Counsel for Defendant-Appellant*
*United States Department of Justice*

NOVEMBER 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,385 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Calisto 14-point font, a proportionally spaced typeface.

*/s/ Jeffrey E. Sandberg*
Jeffrey E. Sandberg

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2023, I electronically filed this reply brief, and on November 21, 2023, I electronically filed this corrected reply brief, with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Jeffrey E. Sandberg*
Jeffrey E. Sandberg